**SEALED**

**FILED**

December 4, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
By:          RR
Deputy

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**Case No: SA:24-CR-00600-XR**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v<br><br>**BROOKLYNN CHANDLER WILLY**<br><br>**Defendant** | **INDICTMENT**<br><br>**COUNT 1:  18 U.S.C. §§ 1512 (c)(2) & 2,**<br>**Obstruction of, and Attempt to Obstruct,**<br>**an Official Proceeding**<br><br>**COUNT 2: 18 U.S.C. § 1001(a)(2),**<br>**False Statement**<br><br>**COUNT 3: 18 U.S.C. § 1028A, Aggravated**<br>**Identity Theft** |

**THE GRAND JURY CHARGES:**

**GENERAL ALLEGATIONS**

At all times relevant herein:

1.　　On or about November 2, 2023, the Federal Bureau of Investigation ("FBI") and the Internal Revenue Service Criminal Division ("IRS") began a criminal investigation into an investor fraud scheme centered in San Antonio and Lubbock, Texas.  A Federal Grand Jury for the Western District of Texas, sitting in San Antonio, issued numerous federal grand jury subpoenas as part of this investigation.  As of the date of this Indictment, this investigation is ongoing (the "Federal Investigation").

2.　　The Defendant, **BROOKLYNN CHANDLER WILLY** ("**WILLY**") was the owner of San Antonio based company named Queen B Advisors LLC d/b/a Texas Financial

1

Advisory ("TFA") and was the owner and sole proprietor of Chandler Capital Holdings ("Chandler Capital"). Among other services, TFA purported to provide asset management and financial planning services.

3.     Victim 1 and Victim 2 are a married couple who reside in the Western District of Texas. Beginning by at least 2018, Victim 1 and Victim 2 utilized **WILLY's** and TFA's services for asset management and investment advice. At **WILLY's** recommendation, in or around March of 2018, Victim 1 and Victim 2 invested money into an investment company based in Lubbock, Texas ("Company 1").

4.     In or around May of 2021, **WILLY** recommended that Victim 1 and Victim 2 invest again with the owners of Company 1. At **WILLY's** recommendation, Victim 1 and Victim 2, through an investment company they controlled ("Victim's Investment company), agreed to invest $500,000 into Company 1 through two notes of $250,000 each. The notes carried terms of one and three years respectively and both notes purported to pay an interest rate of 12%.

5.     To consummate this investment, in or around May of 2021, **WILLY** presented Victim 1 and Victim 2 with several documents concerning their believed $500,000 investment into Company 2. Included within these documents was a document entitled "EXCLUSIVE AGENCY AGREEMENT" which was dated May 7, 2021, and signed by **WILLY**, Victim 1, and Victim 2 (the "Agency Agreement"). The Agency Agreement sets forth Chandler Capital as an "agent" of Victim's Investment company. Under the duties section of the Agency Agreement, the "agent" (Chandler Capital) agreed to execute and deliver a contract between Victim's Investment company and Company 1.

6.      On or about May 7, 2021, Victim 1 wrote a check on behalf of Victim's Investment company to Chandler Capital for $500,000. The "for" line of the check states the check is for Company 1. **WILLY** deposited this check into the bank account for Chandler Capital. The $500,000 was never sent to Company 1 or any other company owned or controlled by the owners of Company 1 but was used by **WILLY** for her own purposes including payments to a credit card used by **WILLY**, checks made to **WILLY** personally, payments to other investors, and payments to another business owned and controlled by **WILLY**.

7.      On or about May 31, 2022, Victim 1 and Victim 2 received a "statement" from a different company owned and controlled by the owners of Company 1 ("Company 2") which purported to reflect their $500,000 investment was presently worth $560,000 and was held in the name of Chandler Capital for the benefit Victim 1 and Victim 2. Among other things, the ongoing Federal Investigation includes investigating whether there was fraud in connection with Victim 1 and Victim 2's $500,000 investment. As part of the Federal Investigation, on August 21, 2024, Federal agents served Federal Grand Jury Subpoenas to TFA and Chandler Capital. Included in both subpoenas were demands for production of all documents (including investor agreements and contracts) and communications relating to Victim 1, Victim 2, and Victim's Investment company.

8.      On or about September 18, 2024, TFA and Chandler Capital produced records pursuant to the Federal Grand Jury Subpoena. Attached to the submissions are notarized Certificates of Authenticity for TFA and Chandler Capital which were signed by **WILLY**. Through these certificates, **WILLY** stated the provided records were "true duplicates of original records" in the custody of TFA and Chandler Capital.

9.      One of the records provided by **WILLY** pursuant to the Federal Grand Jury subpoena was a document entitled "REVOLVING LINE OF CREDIT AGREEMENT" which appeared to be a contract and a promissory note between **WILLY** and Victim's Investment company.  Both the revolving line of credit agreement and promissory note purported to be an agreement for a $500,000 line of credit to **WILLY** from Victim's Investment company with a maturity date of April 16, 2026.  Both the revolving line of credit agreement and promissory note appeared to be signed by **WILLY**, Victim 1 and Victim 2.  In truth, the revolving line of credit agreement and promissory note were false.  Neither Victim 1 nor Victim 2 signed the false revolving line of credit agreement and false promissory note nor agreed to their terms.

10.     Neither TFA nor Chandler Capital provided the actual Agency Agreement as part of their response to the Federal Grand Jury subpoena.

11.     On November 19, 2024, Federal Agents interviewed **WILLY** in San Antonio, Texas.  During the interview, **WILLY** provided the false revolving line of credit agreement and false promissory note to Federal Agents.  **WILLY** falsely claimed the false revolving line of credit agreement and false promissory note were true and correct documents.  **WILLY** also claimed that Victim 1 and Victim 2 signed the false documents in her presence at her office in San Antonio.  During the interview, **WILLY** falsely claimed she told Victim 1 and Victim 2 that their $500,000 investment would be loaned to **WILLY** personally and the loan would not mature until April 16, 2026.  During the interview, **WILLY** falsely claimed there were no other agreements or contracts, signed or unsigned, relating to the $500,000 investment from Victim 1 and Victim 2.

**COUNT ONE**
**[18 U.S.C. §§ 1512(c)(2) & 2]**
**(Obstruction of, and Attempt to Obstruct, an Official Proceeding)**

12.     Count One incorporates by reference, as if fully set forth herein, each and every

paragraph of this Indictment.

13.     From between on or about August 21, 2024, to on or about December 4, 2024, in

the Western District of Texas, the Defendant,

**BROOKLYNN CHANDLER WILLY**

did corruptly obstruct, influence, and impede and attempt to obstruct, influence, and impede an

official proceeding, that is, a federal grand jury proceeding by:

a.  Providing or causing to be provided the false revolving line of credit agreement and
    false promissory note on behalf of TFA and Chandler Capital in response to the
    Federal Grand Jury subpoena;

b.  Providing or causing to be provided the false revolving line of credit agreement and
    false promissory note to Federal Agents during **WILLY's** interview with Federal
    Agents on November 19, 2024;

c.  Falsely stating to Federal Agents during **WILLY's** interview on November 19, 2024,
    that the false revolving line of credit agreement and false promissory note were in fact
    true and correct reflections of her agreement with Victim 1 and Victim 2 concerning
    the May 7, 2021, $500,000 payment Victim 1 and Victim 2 made to Chandler
    Capital; and

d.  Falsely stating to Federal Agents during her interview on November 19, 2024, that
    the there were no other agreements between **WILLY** and Victim 1 and Victim 2

5

concerning the May 7, 2021, $500,000 payment Victim 1 and Victim 2 made to Chandler Capital.

All in violation of 18 U.S.C. §§ 1512(c)(2) &2.

## COUNT TWO
### [18 U.S.C. § 1001(a)(2)]
### (False Statement)

14.     Count Two incorporates by reference, as if fully set forth herein, each and every paragraph of this Indictment.

15.     From between on or about August 21, 2024, to on or about December 4, 2024, in the Western District of Texas, the Defendant,

**BROOKLYNN CHANDLER WILLY**

did willfully and knowingly make a materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating to Federal Agents that the false revolving line of credit agreement and false promissory note which **WILLY** provided and caused to be provided pursuant to a Federal Grand Jury subpoena were true and accurate documents and were signed by Victim 1 and Victim 2. The statement and representations were false because, as **WILLY** then and there knew, the false revolving line of credit agreement and false promissory note were never entered into by Victim 1 and Victim 2 and were never signed by Victim 1 and Victim 2.

All in violation of 18 U.S.C. §§ 1001(a)(2).

## COUNT THREE
### [18 U.S.C. § 1028A]
### Aggravated Identity Theft

16.     Count Three incorporates by reference, as if fully set forth herein, each and every paragraph of this Indictment.

17.    From between on or about August 21, 2024, to on or about December 4, 2024, in the Western District of Texas, the Defendant,

**BROOKLYNN CHANDLER WILLY,**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit a false revolving line of credit agreement and false promissory note with the false and copied signatures of Victim 1 and Victim 2, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, a violation of 18 U.S.C. § 1001(a)(2) as charged in Count Two of this Indictment, knowing that the means of identification belonged to Victim 1 and Victim 2.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

A TRUE BILL

FOREPERSON OF THE GRAND JURY

JAIME ESPARZA
UNITED STATES ATTORNEY

BY: _____
For JOSEPH E. BLACKWELL
Assistant United States Attorney

BY: _____
For KELLY G. STEPHENSON
Assistant United States Attorney