**FILED**

January 22, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ vl

DEPUTY

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**Plaintiff**<br><br><br>v<br><br>**BROOKLYNN CHANDLER WILLY**<br><br>**Defendant** | **CRIMINAL NO. 5:24-CR-00600-XR**<br><br>**SUPERSEDING INDICTMENT**<br><br>**COUNTS 1-6: 18 U.S.C. § 1343, Wire Fraud;**<br><br>**COUNTS 7-8: 18 U.S.C. § 1957, Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity;**<br><br>**COUNT 9: 18 U.S.C. §§ 1512 (c)(2) & 2, Obstruction of, and Attempt to, Obstruct an Official Proceeding;**<br><br>**COUNTS 10-11: 18 U.S.C. § 1001(a)(2), False Statement;**<br><br>**COUNTS 12-13: 18 U.S.C. § 1028A, Aggravated Identity Theft;**<br><br>**COUNT 14: 15 U.S.C. §§ 78j(b) & 78ff; & 17 C.F.R. § 240.10b-5; & 18 U.S.C. § 2, Securities Fraud.**<br><br>**NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE** |

**THE GRAND JURY CHARGES:**

### GENERAL ALLEGATIONS

At all times relevant herein:

1.    The Defendant, **BROOKLYNN CHANDLER WILLY** ("**WILLY**") was the

owner of a San Antonio based company named Queen B Advisors LLC d/b/a Texas Financial

1

Advisory ("TFA") and was the owner and sole proprietor of Chandler Capital Holdings ("Chandler Capital").  Among other services, TFA purported to provide asset management and financial planning services.

**VICTIMS 1 AND 2**

2.      Victim 1 and Victim 2 are a married couple who reside in the Western District of Texas.  Beginning by at least 2018, Victim 1 and Victim 2 utilized **WILLY's** and TFA's services for asset management and investment advice.  At **WILLY's** recommendation, in or around March of 2018, Victim 1 and Victim 2 invested money into an investment company based in Lubbock, Texas ("Company 1").

3.      The investments into Company 1 were generally done through contracts between an investor and Company 1 in which the investor agreed to lend money to Company 1 for the purpose of Company 1 lending that money (alone or in aggregate with other investors) to an affiliated company ("Company A") for the purchase of distressed assets.  Under the general investment structure, those distressed assets would be purchased at a reduced amount by Company A, and then either resold or redeemed for a profit.  These investments are securities because the investors invested money in a common enterprise and were led to expect profits solely from the efforts of others.

4.      In or around May of 2021, **WILLY** recommended that Victim 1 and Victim 2 invest again with an entity controlled by the owners of Company 1.  At **WILLY's** recommendation, Victim 1 and Victim 2, through an investment company they controlled ("Victim 1 and 2's Investment Company"), agreed to invest $500,000 into an entity controlled by the owners of Company 1 through two notes of $250,000 each.  The notes purportedly carried terms of one and three years respectively and both notes purported to pay an interest rate of 12%.

5.     To complete this investment, in or around May of 2021, **WILLY** presented Victim 1 and Victim 2 with several documents concerning their believed $500,000 investment into an entity controlled by the owners of Company 1.  Included within these documents was a document titled "EXCLUSIVE AGENCY AGREEMENT" dated May 7, 2021, and signed by **WILLY**, Victim 1, and Victim 2 (the "Agency Agreement").  The Agency Agreement set forth Chandler Capital (**WILLY**'s company) as an "agent" of Victim 1 and 2's Investment Company. Under the duties section of the Agency Agreement, the "agent" (Chandler Capital) agreed to execute and deliver a contract between Victim 1 and 2's Investment Company and Company 1.

6.     On or about May 7, 2021, Victim 1 wrote a check on behalf of Victim 1 and 2's Investment Company to Chandler Capital for $500,000.  The "for" line of the check states the check is for an entity controlled by the owners of Company 1.  This check was deposited into the Chandler Capital bank account controlled by **WILLY**.  The $500,000 was never sent to Company 1 or any other company owned or controlled by the owners of Company 1.  Instead, **WILLY** used this money for her own purposes, including payments to a credit card used by **WILLY**, checks made payable to **WILLY** personally, payments to other investors, and payments to another business owned and controlled by **WILLY**.

7.     On or about May 31, 2022, Victim 1 and Victim 2 received a "statement" appearing to be from a different company owned and controlled by the owners of Company 1 that purported to reflect their $500,000 investment was presently worth $560,000 and was held in the name of Chandler Capital for the benefit of Victim 1 and Victim 2.

**VICTIMS 3 AND 4**

8.     Victim 3 and Victim 4 are a married couple who reside in the Western District of Texas.  Victims 3 and 4 utilized **WILLY** and TFA for investment management for several years.

In or around October of 2021, **WILLY** convinced Victims 3 and 4 to invest in a company called Cold Moon Holdings.  **WILLY** told Victim 3 that the investment would be for the purchase of bad debt.

9.      On November 4, 2021, **WILLY** emailed Victim 3's and Victim 4's Gmail email addresses from her iCloud account with wiring instructions for deposit of their believed investment into the Cold Moon Holdings' bank account.  An associate of **WILLY** controlled this account.

10.     On or about November 4, 2021, acting on **WILLY**'s instructions, Victims 3 and 4 wired $500,000 to Cold Moon Holdings' bank account.

11.     On or about November 5, 2021, **WILLY** provided a promissory note to Victim 3 for $500,000. The note purported to carry 8% interest and was for a term of one year.  The note falsely stated it was secured by "the proceeds of Maker's collateral interest in a certain Standby Letter of Credit (SBLC)."  **WILLY** provided Victims 3 and 4 with other documentation which falsely made it appear their investment was secured by a Standby Letter of Credit.

12.     In March of 2022, Victims 3 and 4 invested an additional $700,000 in what they believed was a business investment with **WILLY**.  On or about March 3, 2022, Victim 3 wired $700,000 to a Cold Moon Holdings bank account for the purposes of an investment.  One year later, on March 3, 2023, Victims 3 and 4 invested an additional $810,000 to the same Cold Moon Holdings bank account in what they believed was yet another investment with **WILLY**.

13.     In or around March of 2023, **WILLY** provided Victims 3 and 4 with a promissory note for $810,000.  The note falsely stated it was secured by "the proceeds of Maker's collateral interest in a certain Standby Letter of Credit (SBLC)".

14.     In total, Victims 3 and 4 invested $2,010,000 based upon **WILLY**'s false representations concerning the purpose of the investment and the security of the investment. Victims 3 and 4's investment was not used to purchase bad debt nor for business loans.  Instead, Victims 3 and 4's investment was used for the benefit of **WILLY**, used to pay associates of **WILLY**, used to pay other purported investors, and used to make the "interest" payments due to Victims 3 and 4.

## VICTIM 5

15.     Victim 5 resides in the Western District of Texas and was **WILLY**'s client since at least 2016.  From 2016 to 2022, Victim 5 made several investments at **WILLY**'s recommendation.

16.     In or around January of 2022, **WILLY** convinced Victim 5 to invest $75,000 into what Victim 5 believed was commercial real estate development.  To memorialize this investment, **WILLY** provided to Victim 5 a "Loan Modification Agreement" that purported to memorialize a loan of $75,000 from Victim 5 to Cold Moon Holdings.  The agreement falsely stated that the loan is "secured by proceeds of Maker's collateral interest in a certain Standby Letter of Credit."

17.     On or about January 28, 2022, Victim 5 caused to be issued to **WILLY** a cashier's check from the Bank of America with a payee of Cold Moon Holdings.  On or about February 1, 2022, the $75,000 was deposited in the Cold Moon Holdings bank account.  Despite **WILLY**'s representations, Victim 5's money was not used for commercial real estate investments but used for **WILLY**'s benefit.

## VICTIM 6

18.     Victim 6 resided in the Western District of Texas and was **WILLY**'s client since

at least 2019.

19.     In and around October of 2020, **WILLY** convinced Victim 6 to invest $600,000 into business opportunities.  **WILLY** did not inform Victim 6 that this money would be used by **WILLY** personally.  Relying upon **WILLY**'s false representations and material omissions, on or about October 22, 2020, Victim 6 caused $600,000 to be transferred from a bank account controlled by Victim 6 to a bank account controlled by **WILLY**.  Instead of being invested, **WILLY** used this money for her benefit.

### THE FEDERAL INVESTIGATION

20.     On or about November 2, 2023, the Federal Bureau of Investigation and the Internal Revenue Service Criminal Division began a criminal investigation into an investor fraud scheme centered in San Antonio and Lubbock, Texas.  A Federal Grand Jury for the Western District of Texas, sitting in San Antonio, issued numerous federal grand jury subpoenas as part of this investigation (the "Federal Investigation").

21.     Among other things, the Federal Investigation included investigating fraud in connection with Victim 1 and Victim 2's $500,000 investment.  As part of the Federal Investigation, on August 21, 2024, Federal agents served Federal Grand Jury Subpoenas to TFA and Chandler Capital.  Included in both subpoenas were demands for production of all documents (including investor agreements and contracts) and communications relating to Victim 1, Victim 2, Victim 1 and 2's Investment Company, Victim 3, Victim 4, Victim 5, and Victim 6.

22.     On or about September 18, 2024, TFA and Chandler Capital produced records pursuant to the Federal Grand Jury Subpoenas.  Attached to the submissions were notarized Certificates of Authenticity for TFA and Chandler Capital that were signed by **WILLY**.

Through these certificates, **WILLY** stated the provided records were "true duplicates of original records" in the custody of TFA and Chandler Capital.

23.     One of the records provided by **WILLY** pursuant to the Federal Grand Jury Subpoenas was a document titled "REVOLVING LINE OF CREDIT AGREEMENT," which appeared to be a contract between **WILLY** and Victim 1 and 2's Investment Company and a document entitled "promissory note," which appeared to be a promissory note between **WILLY** and Victim 1 and 2's Investment Company.  Both the revolving line of credit agreement and promissory note purported to be an agreement for a $500,000 line of credit to **WILLY** from Victim 1 and 2's Investment Company with a maturity date of April 16, 2026.  Both the revolving line of credit agreement and promissory note appeared to be signed by **WILLY**, Victim 1, and Victim 2.

24.     In truth, the revolving line of credit agreement and promissory note were false. Neither Victim 1 nor Victim 2 signed the false revolving line of credit agreement and false promissory note nor agreed to their terms.

25.     Neither TFA nor Chandler Capital provided the actual Agency Agreement as part of their response to the Federal Grand Jury subpoena.

26.     Another record **WILLY** provided pursuant to the Federal Grand Jury Subpoenas was another document titled "REVOLVING LINE OF CREDIT AGREEMENT," which appeared to be a contract between **WILLY** and Victim 6's company and a corresponding "promissory note," which appeared to be a promissory note between **WILLY** and Victim 6's company.  Both of the revolving line of credit agreement and promissory note purported to be an agreement for a $600,000 line of credit to **WILLY** from Victim 6's Company with a maturity

7

date of November 15, 2025.  Both the revolving line of credit agreement and promissory note appeared to be signed by **WILLY** and Victim 6.

27.     In truth, the second the revolving line of credit agreement and promissory note relating to Victim 6 were false.  Victim 6 never signed the false revolving line of credit agreement and false promissory note nor agreed to their terms.

28.     On November 19, 2024, Federal Agents interviewed **WILLY** in San Antonio, Texas.  During the interview, **WILLY** provided the two false revolving line of credit agreements and false promissory notes referenced above to Federal Agents.  **WILLY** falsely claimed the two false revolving line of credit agreements and false promissory notes were true and correct documents.  **WILLY** also claimed that Victim 1 and Victim 2 signed the false documents in her presence at her office in San Antonio.  During the interview, **WILLY** falsely claimed she told Victim 1 and Victim 2 that their $500,000 investment would be loaned to **WILLY** personally and the loan would not mature until April 16, 2026.  During the interview, **WILLY** falsely claimed there were no other agreements or contracts, signed or unsigned, relating to the $500,000 investment from Victim 1 and Victim 2.

29.     The allegations contained in the General Allegations (paragraphs above) are incorporated in each and every Count of this Superseding Indictment.

## COUNT ONE
### (Wire Fraud)
### (18 U.S.C. § 1343)

## THE SCHEME TO DEFRAUD

30.     From on or about April 1, 2021, to on or about May 7, 2021, Defendant **BROOKLYNN CHANDLER WILLY** devised and intended to devise a scheme to defraud

Victim 1 and Victim 2, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

31.     As set forth in the General Allegations of this Superseding Indictment and incorporated by reference into Count One, **WILLY** devised a scheme to obtain money from Victim 1 and Victim 2.  As part of that scheme, **WILLY** solicited money from Victims 1 and 2 and falsely stated that money would be invested into a Lubbock, Texas based company for business purposes.  Relying upon **WILLY's** false representations, on or about May 7, 2021, Victim 1 wrote a check on behalf of Victim 1 and 2's Investment Company to Chandler Capital for $500,000.  Instead of being invested, **WILLY** used this money for her own purposes including payments to a credit card used by **WILLY**, checks made to **WILLY** personally, payments to other investors, and payments to another business owned and controlled by **WILLY**.

## EXECUTION OF THE SCHEME

32.     On or about May 7, 2021, in the Western District of Texas and elsewhere, the Defendant,

### BROOKLYNN CHANDLER WILLY

having devised and intended to devise the aforesaid scheme, for the purpose of executing said scheme, and attempting to do so, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signs, signals and sounds to and from the

Western District of Texas, as described below:

| COUNT | DATE | ORIGINATING TRANSACTION | DESTINATION |
|---|---|---|---|
| 1 | May 7, 2021 | Check for $500,000 drawn from Victim 1 and 2's Investment Company bank account | JPMorgan Chase Bank account in the name of Chandler Capital Holdings with account number xxxxxxxxx6920 |

All in violation of Title 18, United States Code, Section 1343.

### COUNTS TWO THROUGH FOUR
**(Wire Fraud)**
**(18 U.S.C. § 1343)**

### THE SCHEME TO DEFRAUD

33.     From on or about October 1, 2021, to on or about March 3, 2023, Defendant **BROOKLYNN CHANDLER WILLY** devised and intended to devise a scheme to defraud Victim 3 and Victim 4, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### MANNER AND MEANS

34.     As set forth in the General Allegations of this Superseding Indictment and incorporated by reference into Counts Two through Four, **WILLY** devised a scheme to obtain money from Victim 3 and Victim 4.  As part of that scheme, **WILLY** solicited money from Victims 3 and 4 and falsely stated that money would be an investment into the purchase of bad debts and other business purposes, and the investment would be secured by a Standby Letter of Credit.  Relying upon **WILLY**'s false representations, on or about November 4, 2021, March 3, 2022, and March 3, 2023, Victim 3 wired a total of $2,010,000 into a bank account controlled by an associate of **WILLY**.  Instead of being invested, **WILLY** used this money for the benefit of **WILLY** and others, including using this money to pay **WILLY**, to pay associates of **WILLY**, pay other purported investors, and to make the "interest" payments due to Victims 3 and 4.

## EXECUTION OF THE SCHEME

35.    On or about the following dates, in the Western District of Texas and elsewhere,

the Defendant,

**BROOKLYNN CHANDLER WILLY**

having devised and intended to devise the aforesaid scheme, for the purpose of executing said

scheme, and attempting to do so, did knowingly transmit and cause to be transmitted in interstate

commerce by means of a wire communication, certain signs, signals and sounds to and from the

Western District of Texas, as described below:

| COUNT | DATE | ORIGINATING TRANSACTION | DESTINATION |
|---|---|---|---|
| 2 | November 4, 2021 | Wire for $500,000 from Frost Bank Account number xxxxxxxx4593 | First Commercial Bank Account in the name of Cold Moon Holdings LLC with account number xxxxx6208 |
| 3 | March 3, 2022 | Wire for $700,000 from Frost Bank Account number xxxxxxxx4593 | First Bank and Trust Account in the name of Cold Moon Holdings LLC with account number xxxxx0660 |
| 4 | March 3, 2023 | Wire for $810,000 from Frost Bank Account number xxxxxxxx4593 | First Bank and Trust Account in the name of Cold Moon Holdings LLC with account number xxxxx0660 |

All in violation of Title 18, United States Code, Section 1343.

## COUNT FIVE
**(Wire Fraud)**
**(18 U.S.C. § 1343)**

## THE SCHEME TO DEFRAUD

36.    From on or about January 1, 2022, to on or about February 1, 2022, Defendant

**BROOKLYNN CHANDLER WILLY** devised and intended to devise a scheme to defraud

Victim 5, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

37.     As set forth in the General Allegations of this Superseding Indictment and incorporated by reference into Count Five, **WILLY** devised a scheme to obtain money from Victim 5.  As part of that scheme, **WILLY** solicited money from Victim 5 and falsely stated that money would be invested into commercial real estate development.  Relying upon **WILLY's** false representations, on or about January 28, 2022, Victim 5 caused to be issued a cashier's check drawn upon Victim 5's Bank of America account and provided this check to **WILLY**.  On or about February 1, 2022, **WILLY** caused this check to be cashed into the Cold Moon Holding's bank account.  Instead of being invested, **WILLY** used this money for her own purposes.

## EXECUTION OF THE SCHEME

38.     On or about February 1, 2022, in the Western District of Texas and elsewhere, the Defendant,

### BROOKLYNN CHANDLER WILLY

having devised and intended to devise the aforesaid scheme, for the purpose of executing said scheme, and attempting to do so, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signs, signals and sounds to and from the Western District of Texas, as described below:

| COUNT | DATE | ORIGINATING TRANSACTION | DESTINATION |
|---|---|---|---|
| 5 | February 1, 2022 | Bank of America Cashier's check for $75,000 dated January 28, 2022 and drawn upon Victim 5's bank account. | First Bank and Trust Account in the name of Cold Moon Holdings LLC with account number xxxxx0660 |

All in violation of Title 18, United States Code, Section 1343.

## COUNT SIX
### (Wire Fraud)
### (18 U.S.C. § 1343)

### THE SCHEME TO DEFRAUD

39.     From on or about October 1, 2020, to on or about October 22, 2020, Defendant

**BROOKLYNN CHANDLER WILLY** devised and intended to devise a scheme to defraud

Victim 6, and to obtain money and property by means of materially false and fraudulent

pretenses, representations, and promises.

### MANNER AND MEANS

40.     As set forth in the General Allegations of this Superseding Indictment and

incorporated by reference into Count Six, **WILLY** devised a scheme to obtain money from

Victim 6.  As part of that scheme, **WILLY** solicited money from Victim 6 and falsely stated that

money would be invested.  **WILLY** never informed the money would be used for her own

benefit. Relying upon **WILLY's** false representations and material omissions, on or about

October 22, 2020, Victim 6 caused $600,000 to transferred from a bank account controlled by

Victim 6 to a bank account controlled by **WILLY**.  Instead of being invested, **WILLY** used this

money for her own purposes.

### EXECUTION OF THE SCHEME

41.     On or about October 22, 2020, in the Western District of Texas and elsewhere, the

Defendant,

### BROOKLYNN CHANDLER WILLY

having devised and intended to devise the aforesaid scheme, for the purpose of executing said

scheme, and attempting to do so, did knowingly transmit and cause to be transmitted in interstate

commerce by means of a wire communication, certain signs, signals and sounds to and from the

Western District of Texas, as described below:

| COUNT | DATE | ORIGINATING TRANSACTION | DESTINATION |
|---|---|---|---|
| 6 | October 22, 2020 | Transfer from National Financial Services, LLC on behalf of Maxdou Holdings, Inc. | JP Morgan Chase Bank account in the name of Queen B Advisors, LLC with account XXXXXXXXXXX6103 |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS SEVEN AND EIGHT
**(Engaging in Monetary Transactions in Property
Derived from Specified Unlawful Activity)
(18 U.S.C. § 1957)**

42.     Counts Seven and Eight incorporate by reference, as if fully set forth herein, each

and every paragraph of this Superseding Indictment.

43.     On or about the following dates, in the Western District of Texas and elsewhere,

the Defendant,

**BROOKLYNN CHANDLER WILLY**

did knowingly engage and attempt to engage in a monetary transaction affecting interstate

commerce in criminally derived property of a value greater than $10,000 by, through, or to a

financial institution, to wit, by transferring funds and by making payments as described below,

such property having been derived from a specified unlawful activity, that is, wire fraud, in

14

violation of Title 18, United States Code, Section 1343.

| COUNT | DATE | TRANSACTION |
|-------|------|-------------|
| 7 | May 13, 2021 | Payment of $68,465.55 to American Express Credit Card number xxxxxxxxx4000 from JPMorgan Chase Bank account in the name of Chandler Capital Holdings with account number xxxxxxxxx6920 |
| 8 | May 14, 2021 | Payment of $73,065.81 to American Express Credit Card number xxxxxxxxx4000 from JPMorgan Chase Bank account in the name of Chandler Capital Holdings with account number xxxxxxxxx6920 |

All in violation of Title 18, United States Code, Section 1957(a).

## COUNT NINE
### [18 U.S.C. §§ 1512(c)(2) & 2]
### (Obstruction of, and Attempt to Obstruct, an Official Proceeding)

44.    Count Nine incorporates by reference, as if fully set forth herein, each and every paragraph of this Superseding Indictment.

45.    From between on or about August 21, 2024, to on or about December 4, 2024, in the Western District of Texas, the Defendant,

**BROOKLYNN CHANDLER WILLY**

did corruptly obstruct, influence, and impede and attempt to obstruct, influence, and impede an official proceeding, that is, a federal grand jury proceeding by:

a.  Providing or causing to be provided the false revolving line of credit agreement and false promissory note between **WILLY** and Victim 1 and 2's Investment Company on behalf of TFA and Chandler Capital in response to the Federal Grand Jury Subpoena;

b.  Providing or causing to be provided the false revolving line of credit agreement and false promissory note between **WILLY** and Victim 1 and 2's

15

Investment Company to Federal Agents during **WILLY**'s interview with Federal Agents on November 19, 2024;

c.  Providing or causing to be provided the false revolving line of credit agreement and false promissory note between **WILLY** and Victim 6's company on behalf of TFA and Chandler Capital in response to the Federal Grand Jury Subpoena;

d.  Providing or causing to be provided the false revolving line of credit agreement and false promissory note between **WILLY** and Victim 6's company to Federal Agents during **WILLY**'s interview with Federal Agents on November 19, 2024;

e.  Falsely stating to Federal Agents during **WILLY's** interview on November 19, 2024, that the false revolving line of credit agreement and false promissory note between **WILLY** and Victim 1 and 2's Investment Company were in fact true and correct reflections of her agreement with Victim 1 and Victim 2 concerning the May 7, 2021, investment of $500,000 by Victim 1 and Victim 2; and

f.  Falsely stating to Federal Agents during her interview on November 19, 2024, that the there were no other agreements between **WILLY** and Victim 1 and Victim 2 concerning the May 7, 2021, investment of $500,000 by Victim 1 and Victim 2 made to Chandler Capital.

All in violation of Title 18, United States Code, Sections 1512(c)(2) & 2.

## COUNT TEN
### [18 U.S.C. § 1001(a)(2)]
### (False Statement)

46.     Count Ten incorporates by reference, as if fully set forth herein, each and every paragraph of this Superseding Indictment.

47.     From between on or about August 21, 2024, to on or about December 4, 2024, in the Western District of Texas, the Defendant,

### BROOKLYNN CHANDLER WILLY

did willfully and knowingly make a materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States by stating to Federal Agents that the false revolving line of credit agreement and false promissory note **WILLY** and Victim 1 and 2's Investment Company that **WILLY** provided and caused to be provided pursuant to a Federal Grand Jury subpoena were true and accurate documents and were signed by Victim 1 and Victim 2.  The statement and representations were false because, as **WILLY** then and there knew, the false revolving line of credit agreement and false promissory note were never entered into by Victim 1 and Victim 2 and were never signed by Victim 1 and Victim 2.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT ELEVEN
### [18 U.S.C. § 1001(a)(2)]
### (False Statement)

48.     Count Eleven incorporates by reference, as if fully set forth herein, each and every paragraph of this Superseding Indictment.

49.     From between on or about August 21, 2024, to on or about December 4, 2024, in the Western District of Texas, the Defendant,

**BROOKLYNN CHANDLER WILLY**

did willfully and knowingly make a materially false, fictitious, and fraudulent statements and

representations in a matter within the jurisdiction of the executive branch of the Government of

the United States by stating to Federal Agents that the false revolving line of credit agreement

and false promissory note between **WILLY** and Victim 6's company that **WILLY** provided and

caused to be provided pursuant to a Federal Grand Jury subpoena were true and accurate

documents and were signed by Victim 6. The statement and representations were false because,

as **WILLY** then and there knew, the false revolving line of credit agreement and false

promissory note were never entered into by Victim 6 and were never signed by Victim 6.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT TWELVE
### [18 U.S.C. § 1028A]
### Aggravated Identity Theft

50.     Count Twelve incorporates by reference, as if fully set forth herein, each and

every paragraph of this Superseding Indictment.

51.     From between on or about August 21, 2024, to on or about December 4, 2024, in

the Western District of Texas, the Defendant,

**BROOKLYNN CHANDLER WILLY,**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of

another person, to wit the false and copied signatures of Victim 1 and Victim 2 that were affixed

to a false revolving line of credit agreement and false promissory note with, during and in

relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, a violation of 18

U.S.C. § 1001(a)(2) as charged in Count Ten of this Superseding Indictment, knowing that the

means of identification belonged to Victim 1 and Victim 2.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT THIRTEEN
### [18 U.S.C. § 1028A]
### Aggravated Identity Theft

52.     Count Thirteen incorporates by reference, as if fully set forth herein, each and every paragraph of this Superseding Indictment.

53.     From between on or about August 21, 2024, to on or about December 4, 2024, in the Western District of Texas, the Defendant,

**BROOKLYNN CHANDLER WILLY,**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit the false and copied signature of Victim 6 that was affixed to a false revolving line of credit agreement and false promissory note with, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, a violation of 18 U.S.C. § 1001(a)(2) as charged in Count Eleven of this Superseding Indictment, knowing that the means of identification belonged to Victim 6.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT FOURTEEN
### (Securities Fraud)
### (15 U.S.C. §§ 78j(b) & 78ff and 17 C.F.R. § 240.10b-5)

54.     Count Fourteen incorporates by reference, as if fully set forth herein, each and every paragraph of this Superseding Indictment.

55.     Investments in Company 1 were securities, as defined by the securities laws of the United States because the investors invested money in a common enterprise and were led to expect profits solely from the efforts of others.

56.     From on or about April 1, 2021, to on or about May 7, 2021, in the Western District of Texas and elsewhere, the Defendant

**BROOKLYNN CHANDLER WILLY**

willfully, knowingly, and with intent to defraud, by use of the instrumentalities of interstate

commerce, directly and indirectly, in connection with a security, to wit a sale of investment into

Company 1, did commit or cause to be committed the actions described below:

(a)    employed devices, schemes and artifices to defraud;

(b)    made untrue statements of material facts and omitted to state material facts that were necessary in order to make statements that were made not misleading in light of the circumstances under which the statements were made; and

(c)    engaged in acts, practices and courses of business that operated and would operate as a fraud and deceit on a person,

in violation of Title 17, Code of Federal Regulations, Section 240.10b-5.

All in violation of 15 U.S.C. §§ 78j(b) & 78ff ;17 C.F.R. § 240.10b-5; and 18 U.S.C. § 2.

## NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE
[*See* Fed. R. Crim. P. 32.2]

### I.
### Wire Fraud Violations and Forfeiture Statutes
[Title 18 U.S.C. § 1343, subject to forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]

As a result of the criminal violations set forth in Counts One through Six, the United States

of America gives notice to the Defendant of its intent to seek the forfeiture of property upon

conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 981(a)(1)(C), made applicable

to criminal forfeiture by Title 28 U.S.C. § 2461(c), which states:

**Title 18 U.S.C. § 981.  Civil Forfeiture**
**(a)(1)** The following property is subject to forfeiture to the United States:
* * *
**(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to  .  .  .  any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

Wire Fraud is an offense constituting "specified unlawful activity" as defined in section 1956(c)(7)

of this title.

**Title 28 U.S.C. § 2461.**
> **(c)**  If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure . . . .

## II.
### Money Laundering Violations and Forfeiture Statutes
### [Title 18 U.S.C. § 1957(a), subject to forfeiture pursuant to Title 18 U.S.C. § 982(a)(1)]

As a result of the criminal violations set forth in Counts Seven and Eight, the United States of America gives notice to the Defendant of its intent to seek the forfeiture of property upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 982(a)(1), which states:

**Title 18 U.S.C. § 982.  Criminal forfeiture**
> **(a)(1)** The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957 . . . shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

## III.
### Securities Fraud Violations and Forfeiture Statutes
### [Title 15 U.S.C. §§ 78ff & 78j(b); subject to forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]

As a result of the criminal violations set forth in Count Fourteen, the United States gives notice to Defendant of its intent to seek the forfeiture of property upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c), which states:

**Title 18 U.S.C. § 981.  Civil Forfeiture**
> **(a)(1)** The following property is subject to forfeiture to the United States:
>                         * * *
> **(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to . . .  any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

Securities Fraud is an offense constituting "specified unlawful activity" as defined in section 1956(c)(7) of this title.

> **Title 28 U.S.C. § 2461.**
> **(c)** If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure . . . .

This Notice of Demand for Forfeiture includes, but is not limited to, the property described below.

## IV.
## <u>Real Property</u>

Real Property located at 84 Sendero Ridge, Boerne, TX 78006

## V.
## <u>Money Judgment</u>

**<u>Money Judgment</u>**: a sum of money which represents the value of the property constituting or derived from proceeds traceable to the violations herein and/or the property involved in or any property traceable to the property for violations herein, which the Defendant obtained directly or indirectly, as a result of the violations set forth above for which the Defendant is liable.

## IV.
## <u>Substitute Property</u>

If any property subject to forfeiture for the violations set forth above, as a result of any act or omission of the Defendant:

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third party;
    c. has been placed beyond the jurisdiction of the court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of any other property, up to the value of the money judgment, as substitute property pursuant to Title 21 U.S.C. § 853(p) and

Fed. R. Crim. P. 32.2(e)(1).

A TRUE BILL



FOREPERSON OF THE GRAND JURY

JAIME ESPARZA
UNITED STATES ATTORNEY

BY: _____
For JOSEPH E. BLACKWELL
Assistant United States Attorney

BY: _____
For KELLY G. STEPHENSON
Assistant United States Attorney